IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| THERRON LOCKHEART, | :: | PRISONER HABEAS CORPUS |
| Petitioner, | :: | 28 U.S.C. § 2254 |
| | :: | |
| v. | :: | |
| | :: | |
| ANTHONY WASHINGTON, | :: | CIVIL ACTION NO. |
| Respondent. | :: | 1:11-CV-1162-TWT-LTW |

## ORDER FOR SERVICE OF REPORT AND RECOMMENDATION

The Report and Recommendation of the United States Magistrate Judge, made in accordance with 28 U.S.C. § 636(b)(1) and this Court's Local Rule 72, is attached. The same shall be filed and a copy, together with a copy of this Order, shall be served upon counsel for the parties and upon any unrepresented parties.

Pursuant to 28 U.S.C. § 636(b)(1)(C), within fourteen (14) days of service of this Order, each party may file written objections, if any, to the Report and Recommendation. If objections are filed, they shall specify with particularity the alleged error or errors made (including reference by page number to the transcript if applicable) and shall be served upon the opposing party. The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing for review by the District Court. If no objections are filed, the Report and Recommendation may be adopted as the opinion and order of the District Court and

any appellate review of factual findings will be limited to a plain error review. *United States v. Slay*, 714 F.2d 1093, 1095 (11th Cir. 1983).

The Clerk is **DIRECTED** to submit the Report and Recommendation with objections, if any, to the District Judge after expiration of the time period stated above.

**SO ORDERED**, this 29 day of September, 2011.

LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| THERRON LOCKHEART, | :: | PRISONER HABEAS CORPUS |
| Petitioner, | :: | 28 U.S.C. § 2254 |
| | :: | |
| v. | :: | |
| | :: | |
| ANTHONY WASHINGTON, | :: | CIVIL ACTION NO. |
| Respondent. | :: | 1:11-CV-1162-TWT-LTW |

## ORDER AND FINAL REPORT AND RECOMMENDATION

Petitioner, pro se, is confined at the Rutledge State Prison in Columbus, Georgia. Petitioner seeks a writ of habeas corpus under 28 U.S.C. § 2254 regarding his 2003 convictions for murder, felony murder, and armed robbery. (Doc. 1.)

Petitioner has filed a brief and supplemental brief in support of his petition. (Doc. 7; Doc. 8.) Respondent opposes the petition. (Doc. 4). Both parties have filed exhibits, which consist of the record of the state-court proceedings. (Doc. 5; Doc. 8-1.) For the reasons discussed below, the undersigned **RECOMMENDS** that the Court **DENY** petitioner a writ of habeas corpus and **DENY** him a certificate of appealability.

Petitioner also has filed a motion to amend/correct language in two of his grounds for relief. (Doc. 6.) The Court **GRANTS** Petitioner's motion to amend/correct language. (Doc. 6.)

## I.    Background

In December 2003, a jury in the Superior Court of DeKalb County, Georgia convicted Petitioner of murder, felony murder, and armed robbery in connection with

the shooting death of Lucius Atkinson. (Doc. 1 at 1)[1]; *Lockheart v. State*, 663 S.E.2d 213, 214 (Ga. 2008). The Georgia Supreme Court summarized the trial evidence as follows:

> [O]n March 24, 2001, Lockheart and co-defendant Andrew Fleming offered to give a ride to Lucius Atkinson. Atkinson got into Fleming's car, and Fleming and Lockheart drove him to the residential subdivision where Lockheart lived. Lockheart pulled out a gun, pointed it at Atkinson (who was still in the back seat of the car) and told Atkinson to give him his money. Lockheart took Atkinson's wallet and became angry when he saw that there was no money in it. Lockheart shot Atkinson in the neck and dumped Atkinson's dead body, along with his wallet, in a parking lot next to the subdivision tennis courts.

*Lockheart*, 663 S.E.2d at 214. Petitioner did not testify at trial. Peitioner's defense was that Fleming, who pled guilty to concealing the death of another, committed the robbery and murder and that he was simply present during the crimes. Fleming testified against Petitioner. Attorney Cynthia Roseberry represented Petitioner at trial and sentencing. (Doc. 1 at 7.)

Petitioner's felony murder conviction merged with the malice murder conviction. *Lockheart*, 663 S.E.2d at 214 n.1. The trial court sentenced Petitioner to life in prison for malice murder and a consecutive ten-year prison sentence for armed robbery. *Id.* The trial court later denied Petitioner's motion for new trial, and the Georgia Supreme Court affirmed Petitioner's convictions and sentence. *Id.* at 214 n.1,

---

[1] Citations in this Order and Final Report and Recommendation to page numbers of documents in the Court's record refer to the page numbers created by the Court's docketing system and electronically stamped on the top of each page.

215. Attorney Jonathan Melnick represented Petitioner in connection with the motion for new trial and on appeal. (Doc. 1 at 7; Doc. 5-14 at 130-32.)

Petitioner filed a petition for a writ of habeas corpus in the Superior Court of Bibb County, Georgia in 2009. (Doc. 1 at 2.) That court held an evidentiary hearing and denied Petitioner relief. (*Id.*; Doc. 8-1 at 100-10.) At the evidentiary hearing in 2009, Michelle Gibson, one of the State's trial witnesses against Petitioner, testified that her incriminating statements to police in 2001 were untruthful and that she committed perjury at the trial in 2003 when she testified that Petitioner had confessed the crimes to her. (Doc. 5-5 at 130-32; Doc. 5-6 at 12-14, 47-49.) The Georgia Supreme Court denied Petitioner a certificate of appealability from the state habeas court's decision. (Doc. 1 at 3; Doc. 5-4.)

In his federal habeas petition, Petitioner asserts the following grounds for relief:

1. Michelle Gibson's incriminating statements to police and trial testimony were the result of an unlawful search of Petitioner's home on March 28, 2001;

2. the police suborned perjury from Gibson through a coerced interrogation;

3. the prosecution knowingly used Gibson's false testimony at trial;

4. Roseberry rendered ineffective assistance because she:

    (a) failed to file a motion to suppress Gibson's statements as the fruit of the unlawful search of Petitioner's home;

    (b) erroneously advised Petitioner that if he chose to testify at trial the State could cross-examine him with his statement to police that the trial court held was inadmissible;

3

    (c)    failed to subpoena Crystal Smith for trial to authenticate letters co-defendant Fleming purportedly wrote that incriminated Fleming;

    (d)    failed to present at trial exculpatory letters that Petitioner wrote Gibson while he was in jail awaiting trial;

5.    Melnick rendered ineffective assistance because he:

    (a)    failed to locate and interview Gibson concerning an issue for appeal;

    (b)    failed to develop and raise on appeal the argument that incriminating letters Petitioner wrote Gibson while he was in jail (in which Petitioner stated, among other things, that he wished he had never discussed the crimes with Gibson and asked her to hide and not appear at trial) should not have been admitted at trial because they were unlawfully obtained from Gibson;

    (c)    failed to raise on appeal the claim that Roseberry was ineffective for not presenting at trial exculpatory letters that Petitioner wrote Gibson while he was in jail;

    (d)    failed to raise on appeal the claim that Roseberry was ineffective for not requesting at trial that the jury be charged on the lesser included offense of attempted armed robbery;

    (e)    failed to raise on appeal the trial court's improper response to a jury question during deliberations;[2] and

6.    The prosecution violated Petitioner's right to due process under *Brady v. Maryland*, 373 U.S. 83 (1963) by not telling him before trial that police purportedly gave Gibson a warrant for the letters Petitioner wrote Gibson while in jail awaiting trial.

---

[2] In Peitioner's brief in support of his petition, Petitioner also lists as a ground for relief Melnick's failure to raise on appeal the trial court's error in "giving the state's requested supplementary charges with made unfair statement of the law." (Doc. 7 at 4.) Petitioner does not discuss that ground further, however, or identify the "supplementary charges." (*Id.* at 23-27.) Nor does Petitioner address, or mention, this ground in his petition or his supplemental brief. (*See* Docs. 1, 8.)  The Court is therefore unable to consider it.

4

(Doc. 1 at 10-20; Doc. 7 at 3-4.)  Respondent contends that Petitioner procedurally defaulted grounds one, two, three, four(d), five(a), and six by not raising them in either his direct appeal or his state habeas action and that Petitioner's remaining claims lack merit.  (Doc. 4-1.)

## II.   Applicable Law

Under 28 U.S.C. § 2254, a federal court may issue a writ of habeas corpus for a person held in custody pursuant to a judgment of a state court if that person is held in violation of his rights under federal law.  *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).  This power, however, is limited.

### A.   Review Under 28 U.S.C. § 2254

A federal court may not grant habeas corpus relief for claims previously adjudicated on the merits by a state court unless the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  "This is a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt."  *Cullen*, 131 S. Ct. at 1398 (citations and quotations omitted).

In applying 28 U.S.C. § 2254(d), a federal habeas court first determines the "clearly established federal law" based on "the holdings, as opposed to the dicta, of

[the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). The federal habeas court then determines whether the state court decision is "contrary to" that clearly established federal law, i.e., whether the state court "applies a rule that contradicts the governing law set forth" in Supreme Court cases, or "confronts a set of facts that are materially indistinguishable" from a Supreme Court decision "and nevertheless arrives at a [different] result." *Id.* at 405-06.

If the federal habeas court determines that the state court decision is not contrary to clearly established federal law, it then determines whether the decision is an "unreasonable application" of that law, i.e., whether "the state court identifies the correct governing legal principle" from the Supreme Court's decisions "but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. A federal court may not grant habeas relief "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be [objectively] unreasonable." *Id.* at 409, 411; *see Harrington v. Richter*, 131 S. Ct. 770, 785 (2011) ("For purposes of § 2254(d)(1), an <u>unreasonable</u> application of federal law is different from an <u>incorrect</u> application of federal law." (quotations omitted)). In short, when a state court applies clearly established federal law to a claim, federal habeas relief is not available unless the petitioner shows that the state court's ruling "was so lacking in justification that there was an error well understood

and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 131 S. Ct. at 786-87.

B.   Procedural Default

Federal habeas review is generally barred for a claim that was procedurally defaulted in state court.  For example,

> if the petitioner simply never raised a claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred due to a state-law procedural default, the federal court may foreclose the petitioner's filing in state court; the exhaustion requirement and procedural default principles combine to mandate dismissal.

*Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999) (citations omitted).  Under Georgia law, a ground for relief that is not raised on direct appeal generally cannot be asserted later in a state habeas petition unless the petitioner shows cause and prejudice for the failure to raise the issue on direct appeal.  *Head v. Ferrell*, 554 S.E.2d 155, 160 (Ga. 2001); *Gaither v. Gibby*, 475 S.E.2d 603, 604 (Ga. 1996) ("[A]ny issue that could have been raised [on direct] appeal but was not, is procedurally barred from consideration in [state] habeas corpus proceedings absent a showing of adequate cause for the failure to raise it earlier and a showing of actual prejudice." (citation omitted)).  Absent such a showing, a ground not raised on direct appeal is procedurally defaulted and, thus, barred from review by a federal court.  *Wainwright v. Sykes*, 433 U.S. 72, 86-87 (1977); *Bailey*, 172 F.3d at 1303.

This bar to federal habeas review may be lifted if the petitioner can demonstrate either (1) cause for the default and actual prejudice from the alleged violation of

federal law; or (2) a fundamental miscarriage of justice, *i.e.,* the continued incarceration of someone who is actually innocent, arising from the federal court's failure to consider the defaulted claim. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray v. Carrier*, 477 U.S. 478, 488-89, 495-96 (1986). To establish cause, a petitioner must show either that his counsel's assistance was so ineffective that it violated his Sixth Amendment right to counsel or "that some objective factor external to the defense impeded . . . efforts to comply with the State's procedural rule." *Murray*, 477 U.S. at 488. To establish prejudice, "a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different" had he presented his defaulted claim. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003) (citations omitted). Finally, to prevail on a claim of actual innocence, a petitioner must "support his allegations of constitutional error with new reliable evidence . . . that was not presented at trial," thereby showing "that it is more likely than not that no reasonable juror would have convicted him." *Schlup v. Delo*, 513 U.S. 298, 324, 327 (1995).

C.      Ineffective Assistance of Counsel

The standard for evaluating ineffective assistance of counsel claims is set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The analysis is two-pronged, but a court need not address both prongs "if the [petitioner] makes an insufficient showing on one." *Id.* at 697.

8

The petitioner must first show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690. A court must be "highly deferential" and must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689; *Atkins v. Singletary*, 965 F.2d 952, 958 (11th Cir. 1992) ("We also should always presume strongly that counsel's performance was reasonable and adequate. . . ."). Counsel is not incompetent so long as the particular approach taken could be considered sound strategy, *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc), and "a petitioner seeking to rebut the strong presumption of effectiveness bears a difficult burden," *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc). Appellate counsel in a criminal case does not have a duty to raise every nonfrivolous issue requested by his client. *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983).

Under *Strickland*'s second prong, a petitioner must demonstrate that counsel's unreasonable acts or omissions prejudiced him. *Strickland*, 466 U.S. at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. A petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

When the deferential *Strickland* standard is "combined with the extra layer of deference that § 2254 provides, the result is double deference and the question becomes whether 'there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.'" *Johnson v. Sec'y, DOC*, 643 F.3d 907, 910-11 (11th Cir. 2011) (citing *Harrington*, 131 S. Ct. at 788). "Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding." *Id.* at 911.

## III.   Legal Analysis

Petitioner procedurally defaulted grounds one, two, three, four(d), and six by not raising them in either his direct appeal or his state habeas action.[3] In ground one, Petitioner alleges that the evidence obtained from Michelle Gibson – she told police that Petitioner confessed the crimes to her and she confirmed those statements at trial – was "the result of an unlawful search" of Petitioner's home on March 28, 2001, a few days after the crimes. (Doc. 1 at 10-12.) Petitioner alleged in state court that the evidence obtained from Gibson was the result of an unlawful arrest and coercive interrogation of Gibson, not the result of an unlawful search of Petitioner's home. (Doc. 5-2 at 17-20.) In fact, Petitioner stated in his state habeas brief that he "does not argue that the incriminating statements obtained from Gibson were the result of the

---

[3] Contrary to Respondent's contention, Petitioner raised ground five(a) – that Melnick failed to locate and interview Gibson – in his state habeas action. (Doc. 5-2 at 4; Doc. 8-1 at 100.) The undersigned addresses that ground in Part III.B, below.

10

unlawful search." (*Id.* at 20.) The claim Petitioner presented to the state habeas court regarding the inadmissibility of Gibson's incriminating statements was not the same claim he has presented in this Court.[4]

Petitioner also did not raise grounds two, three, four(d), and six in his state proceedings, and he would be barred from raising those grounds in a successive state habeas petition. *See Head*, 554 S.E.2d at 160. Petitioner's claim in ground two, as amended, is that police engaged in misconduct by interrogating Gibson in an impermissibly suggestive manner likely to elicit untrue statements, in violation of his right to due process. (Doc. 1 at 3-4; Doc. 6 at 3.) Petitioner's claim in his state habeas proceedings was labeled as a due process claim, but he primarily challenged the affidavit underlying the search warrant for his home and Roseberry's performance regarding the claim. (Doc. 5-2 at 17-27.) The state habeas court found the claim defaulted because Petitioner did not raise it on direct appeal. (Doc. 8-1 at 109-10.)

Even if Petitioner had not procedurally defaulted ground two, the undersigned finds upon de novo review of the issue that Petitioner has not shown a violation of due process. Ground two challenges the police's interrogation of Gibson at the police station, during which she gave a statement that Petitioner had confessed the crimes to her. (Doc. 1 at 3-4; Doc. 6 at 3.) Gibson told police at her home, before they took her to the station, that she did not know anything about the crimes. (Doc. 5-23 at 65.)

---

[4] It also is not the same as Petitioner's claim on direct appeal and in this Court that Roseberry rendered ineffective assistance, in violation of the Sixth Amendment, by not filing a motion to suppress evidence from Gibson.

Gibson testified that she recanted that statement and told police it was not true while she was in the police car riding to the station, before the alleged events that Petitioner contends were coercive and improper. (*Id.* at 75-76.) Gibson also testified that while she felt pressured in making the incriminating statement at the police station, the statement was the truth. (*Id.* at 77.) Ground two fails on its merits as Petitioner has shown no due process violation.[5]

Petitioner has shown neither cause for not raising the defaulted grounds nor that he will be prejudiced if the grounds are not considered, i.e., that the result of the state proceedings would have been different had he presented his defaulted claims. Petitioner contends that he could not have raised ground six – the *Brady* claim – in the state proceedings because he was not aware of the purported warrant at issue until Gibson mentioned it in her testimony during the state habeas evidentiary hearing. Petitioner admits, however, that he could – and in fact did – raise additional claims in

---

[5] Ground three – that the prosecution knowingly presented false testimony from Gibson at trial – would also fail on its merits for similar reasons. Petitioner has not shown that the prosecution knew Gibson's trial testimony was false. Gibson admitted at trial to changing her initial statement to police and being pressured at the police station. Even if the evidence of Gibson's incriminating statements to police in the police car and at the police station had been suppressed, the prosecution could have elicited from her at trial what Petitioner told her after the crimes. Moreover, Gibson testified that Petitioner confessed the crimes to her and that her testimony was truthful independent of the circumstances under which she spoke with police. The details of the shooting that Gibson testified Petitioner told her also matched forensic evidence presented at trial.

the state habeas case in his post-hearing brief, but he did not raise a *Brady* claim in that brief.[6] (Doc. 8-1 at 147-201.)

Nor has Petitioner shown that he is actually innocent of the crimes for which he was convicted. While Petitioner continues to challenge the credibility of trial witnesses, like Fleming, he has not presented new, reliable evidence that demonstrates that he is factually innocent of the crimes and that would have precluded a reasonable juror from convicting him. *See Schlup*, 513 U.S. at 324, 327. Thus, the Court cannot review the procedurally defaulted grounds.

A.   Petitioner's Claims that Roseberry Rendered Ineffective Assistance

Petitioner is not entitled to relief on grounds four(a), four(b), and four(c) regarding Roseberry's performance because he has not shown that the Georgia Supreme Court's resolution of those claims was contrary to, or involved an unreasonable application of, clearly established federal law. In rejecting Petitioner's ineffective assistance claims, the state appellate court properly applied the controlling Supreme Court precedent – *Strickland*. *Lockheart*, 663 S.E.2d at 215. Thus, that court's decision is not contrary to clearly established federal law and cannot be disturbed unless it is an objectively unreasonable application of *Strickland*'s standard.

---

[6] To the extent Petitioner argues that he did not raise ground four(d) on direct appeal because of Melnick's ineffectiveness, his claim that Melnick was ineffective fails for the reasons discussed in Part III.B and, thus, cannot serve as cause for the procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) ("[I]neffective assistance adequate to establish cause for the procedural default of some *other* constitutional claim is *itself* an independent constitutional claim.").

*See Williams*, 529 U.S. at 405-06, 413.  Petitioner has not shown that the Georgia Supreme Court unreasonably applied *Strickland* to the three alleged instances of Roseberry's ineffectiveness.

As to ground four(a), Petitioner disputes the Georgia Supreme Court's finding that Gibson voluntarily gave police the incriminating letters from Petitioner and, thus, that Roseberry was not ineffective for not filing a motion to suppress those letters and Gibson's testimony.  The state appellate court's ruling is consistent with Gibson's testimony at trial that she gave police the letters in response to their request.  (Doc. 5-23 at 63-64, 71-72.)  Gibson did not mention a warrant for the letters until six years later at the evidentiary hearing in Petitioner's state habeas case.  When asked at trial "why did you turn those letters over," Gibson testified that the detective asked her for them, recalled specific details about that conversation, and testified that she produced the letters in response to the request, without ever mentioning a warrant.[7]  (Doc. 5-20 at 20.)  During the state habeas proceedings years later, Gibson testified that she did not mention the warrant at trial because she was not specifically asked about a warrant.[8]  (Doc. 5-6 at 18, 21.)

---

[7] Gibson was questioned about the letters twice at trial – first outside the presence of the jury and later during her direct and cross examination with the jury present.  Gibson consistently testified that she gave police the letters at their request and did not mention a warrant or compulsion on either occasion, in response to either the prosecution's or defense's questions about the letters.

[8] Gibson's testimony at the state habeas hearing conflicted with that of her husband, both of whom Petitioner presented as witnesses.  Gibson testified that police "came to my home with a warrant for the letters" and that her (future) husband was at

Even if Gibson gave police the letters involuntarily pursuant to a warrant for them, Petitioner has not explained why the letters would have been inadmissible at trial. Thus, Petitioner has not shown that the appellate court improperly rejected his claim that Roseberry was ineffective for not moving to suppress the letters. Petitioner's speculative and wholly conclusory contention that the letters would have been suppressed is insufficient to overcome the deference owed the state court's decision. Nor has Petitioner shown a reasonable probability that the letters would have been suppressed on the theory that police discovered Gibson only as a result of the allegedly unlawful search of Petitioner's home on March 28, 2001, and that all evidence from Gibson would have been excluded as fruits of that unlawful search. The affidavit used to obtain the March 28, 2001 search warrant mentions Gibson by name as someone with potential information about the crimes. (Doc. 8-1 at 10-11.) Moreover, a police detective testified at trial, consistent with the affidavit, that they learned of Gibson before speaking with her. (Doc. 5-20 at 90.) Thus, the only evidence in the state-court record is that police discovered Gibson before they searched Petitioner's home because it is undisputed that Gibson did not speak with police until police searched the home (where Gibson was living at the time) on March

---

home at that time. (Doc. 5-5 at 127; Doc. 5-6 at 56.) Gibson's husband testified that the police never came to their home while he was there and that Gibson told him police served the warrant on her at work. (Doc. 5-6 at 45, 51-54.) This inconsistent testimony also undermines Petitioner's ability to show prejudice regarding his ineffective assistance claims in grounds five(a) and five(b). *See infra* Part III.B.

28, 2001. The Georgia Supreme Court's finding that Roseberry was not ineffective in failing to file a motion to suppress was not objectively unreasonable.[9]

The state appellate court's rejection of Petitioner's claim in ground four(b) that Roseberry gave him misleading advice as to whether he should testify at trial also was an objectively reasonable application of *Strickland*. Petitioner has not shown a reasonable probability that the outcome of his trial would have been different had he testified. As the Georgia Supreme Court noted, Petitioner would have faced cross-examination regarding his oral confession to Gibson that he committed the crimes and the similarly incriminating statements in his letters to Gibson. *Lockheart*, 663 S.E.2d at 215. Petitioner has identified no evidence he could or would have offered with his own testimony.

Finally, as to ground four(c), the state appellate court reasonably found that Roseberry was not deficient for not subpoenaing Crystal Smith to authenticate at trial letters that co-defendant Fleming allegedly wrote Petitioner in which Fleming made self-incriminating statements. It also was reasonable to conclude that Roseberry's decision did not prejudice Petitioner. In its order denying Petitioner's motion for new trial, the state trial court found, after holding an evidentiary hearing, that Petitioner did not give Roseberry Fleming's purported letters until the third day of trial (the last day

---

[9] Roseberry filed an amended motion to dismiss before trial, arguing that police obtained evidence from Gibson unlawfully, in violation of Petitioner's Fourth Amendment and due process rights. (Doc. 5-10 at 9-11.) The trial court's rejection of those arguments further supports the appellate court's finding that Roseberry's decision not to file a motion to suppress evidence from Gibson was reasonable.

of evidence) and that Smith's testimony at the hearing was not credible.[10] (Doc. 5-15 at 1.) Moreover, the letters do not bear Fleming's name or signature and contain no admission of guilt. (Doc. 8-1 at 57-61.) That was the evidence of record before the state appellate court, and it further demonstrates the reasonableness of that court's decision that Roseberry was not ineffective.

The state appellate court also knew that Roseberry presented evidence at trial that was stronger than the dubious letters Fleming purportedly wrote. Roseberry presented two witnesses who testified that Fleming confessed to them that he, not Petitioner, committed the crimes and another witness who testified that Fleming tried to sell him a gun similar to that used in the crimes shortly after the crimes were committed.[11] (Doc. 5-24 at 104-33.) Moreover, while Fleming testified against Petitioner, Petitioner admits that Roseberry "effectively impeached [Fleming] by a prior inconsistent statement given to police." (Doc. 8 at 13.)

In short, Petitioner has not made the "doubly difficult" showing required to overcome the "double deference" applicable to his claims, adjudicated by the state appellate court, that Roseberry was ineffective. *See Johnson*, 643 F.3d at 910-11. There is, at the very least, a "reasonable argument that [Roseberry] satisfied

---

[10] Despite learning of the letters late in the trial, Roseberry argued for their admission and examined Fleming about them outside the presence of the jury. (Doc. 5-23 at 94-103.) Fleming testified that he did not write the letters and saw them for the first time at trial. (*Id.* at 98-100.)

[11] The murder weapon was never found, thus making this witness' testimony even more favorable to Petitioner.

*Strickland*'s deferential standard" as to the three grounds for relief at issue. *See Harrington*, 131 S. Ct. at 788. Accordingly, Petitioner is not entitled to federal habeas relief on grounds four(a), four(b), and four(c).

B.    Petitioner's Claims that Melnick Rendered Ineffective Assistance

Petitioner argues in ground five(a) that Melnick should have located and interviewed Gibson before the hearing on Petitioner's motion for new trial to determine whether she voluntarily gave police the incriminating letters Petitioner wrote her, as she testified at trial, or produced them only pursuant to a warrant, as she testified at the state habeas hearing. The state habeas court found Melnick was not ineffective for not doing so because Gibson's whereabouts were unknown and because Gibson's testimony in the state habeas case was suspect. (Doc. 8-1 at 103-04.) Petitioner has not shown that Melnick had any basis prior to appeal to think Gibson had produced the letters in response to a warrant. As discussed in Part III.A, above, Gilbert testified on two different occasions at trial that she voluntarily gave the police the letters in response to a mere request, and she never mentioned a warrant for the letters or any compulsion. Nor has Petitioner shown any basis for Melnick to think that, even if Gibson produced the letters only in response to a warrant, the letters would not have been admitted at trial. The state habeas court's rejection of this claim was not objectively unreasonable.

In ground five(b), Petitioner contends that Melnick should have argued on appeal that Petitioner's letters to Gibson were inadmissible at trial as fruits of the

18

unlawful search of Petitioner's home and the compelled seizure of the letters. The undersigned agrees with Petitioner that the state habeas court erroneously found that it could not consider this claim because it was raised and decided adversely to Petitioner on appeal. Petitioner did not – and could not have – raised Melnick's alleged ineffectiveness on appeal because Melnick represented Petitioner on appeal and the claim necessarily ripened only after appeal. Because the state habeas court did not adjudicate the merits of ground five(b), this Court reviews it de novo.

Melnick was not ineffective for not arguing on appeal that the letters were the inadmissible fruits of an unlawful search or seizure because there was no reasonable basis to believe there was an unlawful search or seizure. Petitioner's claim hinges on his argument that police discovered Gibson only through the search of Petitioner's home, that the search of his home was unlawful because the search warrant was invalid, and that all evidence obtained from Gibson was therefore inadmissible. As discussed in Part III.A, above, the evidence does not support Petitioner's argument that Gibson was discovered only through the search of his home. The trial evidence also provides no basis for an argument that police unlawfully seized the letters from Gibson. Thus, the undersigned cannot say that no reasonable lawyer would have failed to argue on appeal that the letters were the product of an unlawful search or seizure. Given the absence of an evidentiary basis for such an argument, Petitioner also has not shown that he would have prevailed on appeal had Melnick raised the argument. Petitioner is not entitled to relief on ground five(b) of his petition.

In ground five(c), Petitioner contends Melnick should have argued on appeal that Roseberry was ineffective for not presenting at trial exculpatory letters that Petitioner wrote Gibson while in jail. The state habeas court concluded that the exculpatory letters were inadmissible hearsay because Petitioner did not testify at trial. (Doc. 8-1 at 104.) Petitioner argues that the letters were admissible under the rule of completeness because the State presented the other, inculpatory letters he wrote Gibson. Even if Petitioner is correct, the state habeas court's ruling is entitled to deference. *See Borden v. Allen*, 646 F.3d 785, 817 (11th Cir. 2011) ("[I]t is not enough that the state court's adjudication be only incorrect or erroneous; it must have been objectively unreasonable." (citations omitted)).

The state habeas court's conclusion that counsel was not ineffective here was not objectively unreasonable because Petitioner has not shown that he would have prevailed on appeal had Melnick raised the issue. Melnick would have had to persuade the appellate court that no reasonable lawyer would have failed to present the exculpatory letters at trial and that Petitioner was prejudiced at trial because Roseberry did not present them. The letters are not clearly exculpatory as the relevant statements are vague, while the inculpatory letters that were admitted at trial are damning and provide greater detail. (Doc. 5-7 at 11-35; Doc. 5-23 at 51-63.) In the inculpatory letters, among other things, Petitioner stated that he wished he had never discussed the crimes with Gibson, emphasized the importance of Gibson's testimony at trial to the State's case, and asked Gibson to hide and not appear at trial. (*Id.*)

20

In the face of the explicit testimonial evidence against Petitioner, it was not unreasonable for Roseberry to conclude that the other letters he wrote Gibson would have had little probative value. Thus, given the difficulty in showing a reasonable probability of a different outcome at trial if all the letters had been admitted, it was reasonable for Melnick to conclude that Roseberry's decision not to present all of the letters was not a meritorious issue for appeal. *See Jones v. Barnes*, 463 U.S. 745, 751-54 (1983) (appellate counsel in a criminal case has no duty to raise every nonfrivolous issue). The state habeas court's conclusion that Melnick was not ineffective was objectively reasonable.

In ground five(d), Petitioner contends that Melnick should have argued on appeal that Roseberry was ineffective for not requesting a jury instruction on the crime of attempted armed robbery. The state habeas court found that although the evidence showed the victim's wallet contained no money and Petitioner promptly discarded the wallet, the armed robbery was complete under Georgia law when Petitioner took the wallet from the victim at gunpoint. (Doc. 8-1 at 107-08); *see Lemattey v. State*, 508 S.E.2d 215, 215-16 (Ga. Ct. App. 1998). The state habeas court thus concluded that there was no reasonable basis for Melnick to argue that Roseberry was ineffective for not requesting an attempted armed robbery instruction. (*Id.*) That conclusion was objectively reasonable based on the evidence presented at trial. Fleming consistently testified, both on direct and cross-examination, that Petitioner removed the wallet from the victim's pocket after pointing a gun at him and demanding his money and

discarded the wallet only after looking through it. (Doc. 5-23 at 124-25; Doc. 5-24 at 22, 70-71.) The state habeas court reasonably applied *Strickland* in rejecting Petitioner's claim that Melnick was ineffective for not arguing on appeal that Roseberry should have requested an attempted armed robbery instruction.

Finally, in ground five(e) Petitioner claims that Melnick should have argued on appeal that the trial court erroneously responded to the jury's note during deliberation, which asked the trial court to repeat the instructions on the elements of the charged crimes and asked whether the role a person plays during an armed robbery matters. The state habeas court found that there was no meritorious ground for appeal because the trial court re-charged the jury on the elements of the charged crimes and told them those instructions may answer their questions about armed robbery. (Doc. 8-1 at 104-06); *see* O.C.G.A. § 16-8-41(a) (listing elements of armed robbery). Petitioner speculates that the jury's note implied their belief that he did not commit armed robbery and thought he was merely connected with an armed robbery that Fleming committed. Petitioner's speculation and self-serving conclusions fall far short of demonstrating that the state habeas court's conclusion was an objectively unreasonable application of *Strickland.* The state habeas court properly reviewed the relevant Georgia law regarding jury instructions on elements of crimes, concluded that the trial court did not err in its response to the jury's note, and thus reasonably concluded that Melnick was not ineffective for not asserting such error on appeal. (*Id.*) Petitioner has shown no basis for disturbing that decision.

22

As with his claims that Roseberry rendered ineffective assistance, Petitioner has not overcome the "double deference" applicable to his claims, adjudicated by the state habeas court, that Melnick was ineffective. *See Johnson*, 643 F.3d at 910-11. Accordingly, Petitioner is not entitled to relief under § 2254.

## IV.   Certificate of Appealability

Rule 11 of the Rules Governing § 2254 Cases provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability ("COA") may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A substantial showing of the denial of a constitutional right "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (citation and quotations omitted).

A COA is not warranted in this case. As shown in Part III, above, the resolution of Petitioner's grounds for relief is not reasonably debatable. Petitioner procedurally defaulted some of his claims and has not shown that the state courts' adjudication of his other claims was contrary to, or involved an unreasonable application of, clearly established federal law. Petitioner has not made "a substantial showing of the denial of a constitutional right" and should be denied a COA.

## V.    Conclusion

For the foregoing reasons, **IT IS RECOMMENDED** that the petition for a writ of habeas corpus [1] be **DENIED** and that this action be **DISMISSED**.  **IT IS FURTHER RECOMMENDED** that Petitioner be **DENIED** a certificate of appealability.  The Court **GRANTS** Petitioner's motion to amend/correct language in two of his grounds for relief [6].

**SO ORDERED AND RECOMMENDED** this 29 day of September, 2011.

LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE

24